J. S64034/15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN RE: X.J. | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: D.C.A., MOTHER | No. 1004 MDA 2015 |

Appeal from the Decree May 11, 2015,
in the Court of Common Pleas of Lancaster County,
Orphans' Court, at No(s): 1661 of 2013

BEFORE: FORD ELLIOTT, P.J.E., WECHT, and FITZGERALD,[*] JJ.

MEMORANDUM BY FITZGERALD, J.:                    **FILED NOVEMBER 13, 2015**

D.C.A. ("Mother") appeals from the decree entered May 11, 2015, in the Court of Common Pleas of Lancaster County, which involuntarily terminated her parental rights to her minor son, X.J. ("Child"), born in July of 2010.  We affirm.

A prior panel of this Court summarized the relevant factual and procedural history of this matter, as follows.

> [Child] was removed from Mother's care as a result of Mother's alleged drug use, and following an incident in which [Child] was left unsupervised for an extended period of time.  Because of Mother's neglect, [Child] fell out of a bassinet/playpen and fractured his arm.  The Lancaster County Children and Youth Social Service Agency (the Agency) filed a petition for temporary custody of [Child], along with a shelter care application and motion for a finding of aggravated circumstances.  [Child] was adjudicated dependent on May 29, 2013.[1]  Mother

---

[*] Former Justice specially assigned to the Superior Court.

[1] The juvenile court also found aggravated circumstances, and ordered that the Agency need not make efforts to reunify Mother with Child.  Additionally,

appealed, and a panel of this Court affirmed the juvenile court's order on November 7, 2013. *See In re X.J.*, 91 A.3d 1276 (Pa. Super. 2013) (unpublished memorandum). Mother did not file a petition for allowance of appeal with our Supreme Court.

Meanwhile, on July 25, 2013, the Agency filed a petition to terminate Mother and Father's parental rights to [Child]. The orphans' court held a termination hearing on March 17, 2014. Mother did not appear at said hearing. The orphans' court issued a decree terminating Mother's parental rights, dated March 17, 2014, and entered April 21, 2014.[2] Also on April 21, 2014, Mother filed a notice of appeal, along with a concise statement of errors complained of on appeal pursuant to Pennsylvania Rule of Appellate Procedure 1925(a)(2)(i).

*In re X.J.*, 105 A.3d 1, 2-3 (Pa. Super. 2014) (footnotes omitted).

On November 20, 2014, this Court vacated the April 21, 2014, termination decree. *Id.* at 7. The panel reasoned that Mother was not represented by counsel during the March 17, 2014 termination hearing and was not advised of her right to counsel. *Id.* The panel remanded the case, "for a new termination hearing, before which the orphans' court shall advise Mother of her counsel rights, appoint counsel for Mother, or affirmatively determine that Mother does not qualify for counsel." *Id.*

---

the record indicates that Mother's visits with Child were ended, although it is not clear whether the visits were ended at the same time Child was adjudicated dependent. At the latest, Mother's visits were ended prior to an October 21, 2013 status review hearing. *See* N.T., 10/23/13, at 8, 11.

[2] That decree also terminated the parental rights of Child's father, H.W.R. H.W.R. did not appeal the termination of his parental rights.

On December 11, 2014, the orphans' court appointed a new attorney for Mother. A new termination hearing was held on May 11, 2015. Following the hearing, the court entered a decree again terminating Mother's parental rights. Mother timely filed a notice of appeal on June 10, 2015, along with a concise statement of errors complained of on appeal.

Mother now raises the following issue for our review. "Whether the [orphans'] court erred when it terminated the parental rights of the biological Mother[?]" Mother's Brief at 7.

Mother argues that the orphans' court placed too much weight on her recent incarceration when deciding to terminate her parental rights. *Id.* at 10, 12. Mother emphasizes that she was attending mental health treatment and drug abuse counseling prior to being incarcerated. *Id.* at 12. Mother contends that the orphans' court "should have demonstrated some leniency and an extension of time should have been afforded." *Id.* at 10, 12.

We consider Mother's claim mindful of our well-settled standard of review.

> The standard of review in termination of parental rights cases requires appellate courts to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. A decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. The trial court's decision, however, should not be reversed merely because the record would support a different result. We have previously emphasized our deference to trial courts that

> often have first-hand observations of the parties spanning multiple hearings.

*In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013) (alteration, citations, and quotation marks omitted).

Termination of parental rights is governed by Section 2511 of the Adoption Act, 23 Pa.C.S. §§ 2101-2938, which requires a bifurcated analysis.

> Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

*In re L.M.*, 923 A.2d 505, 511 (Pa. Super. 2007) (citations omitted).

In this case, the orphans' court terminated Mother's parental rights pursuant to Sections 2511(a)(1), (2), (5), and (8). We need only agree with the orphans' court as to any one subsection of Section 2511(a), as well as Section 2511(b), in order to affirm. *In re B.L.W.*, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*). Here, we analyze the court's decision to terminate under Sections 2511(a)(2) and (b), which provide as follows.

**(a) General rule.**—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

\* \* \*

(2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

\* \* \*

**(b) Other considerations.**—The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S. § 2511(a)(2), (b).

We first address whether the orphans' court abused its discretion by terminating Mother's parental rights pursuant to Section 2511(a)(2).

In order to terminate parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(2), the following three elements must be met: (1) repeated and continued incapacity, abuse, neglect or refusal; (2) such incapacity, abuse, neglect or refusal has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being; and (3) the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied.

*In re Adoption of M.E.P.*, 825 A.2d 1266, 1272 (Pa. Super. 2003) (citation omitted). "The grounds for termination due to parental incapacity that cannot be remedied are not limited to affirmative misconduct. To the contrary, those grounds may include acts of refusal as well as incapacity to perform parental duties." *In re A.L.D.*, 797 A.2d 326, 337 (Pa. Super. 2002) (citations omitted). "[A] parent's incarceration is relevant to the section (a)(2) analysis and, depending on the circumstances of the case, it may be dispositive of a parent's ability to provide the 'essential parental care, control or subsistence' that the section contemplates." *In re A.D.*, 93 A.3d 888, 897 (Pa. Super. 2014) (citation omitted).

The record reveals that Mother first became known to the Agency in 1993. Agency's Ex. 2, at 1. In March of 1993, the Agency received reports indicating that Mother's daughter, N., had been sexually abused by her father, M.A. *Id.* In May of 1993, the Agency received reports that Mother was failing to provide adequate care for N., and for her other daughter, D. *Id.* Protective services were provided to the family. *Id.*

In March of 1996, the Agency received a report indicating that Mother was abusing drugs and alcohol and failing to supervise her daughters. *Id.* at 2. Mother was involuntarily committed to a mental health facility, and the children were placed in foster care. *Id.* During this time, it was discovered that D. had cigarette burns on her back. *Id.* D. reported that Mother

caused the burns, and a founded report of child abuse was issued in June of 1996. *Id.*

In July of 1996, the Agency received a report that Mother had allowed unsupervised contact between her daughters and M.A. *Id.* A report of sexual abuse was indicated as to Mother in September of 1996. *Id.* Mother was provided with a reunification plan to regain custody of the children. *Id.* However, Mother failed to comply, and her parental rights to N. and D. were involuntarily terminated in February of 2000. *Id.*

Mother gave birth to a son, J., in July of 2005. *Id.* J. was placed in foster care only a few days after his birth, due to concerns regarding Mother's drug use and "untreated mental health," and because an emergency caregiver had not been identified. *Id.* Mother again failed to comply with the Agency's reunification plan, and Mother's parental rights to J. were involuntarily terminated in August of 2007.[3] *Id.*

With respect to the instant matter, Agency caseworker, Rene Dolly, testified that she was assigned to Child's case on March 31, 2014. N.T., 5/11/15, at 4-5. Ms. Dolly "had a few phone calls" with Mother in March of 2015, and met with Mother at the Agency at some point prior to March. *Id.* at 6, 8-9. During this meeting, Mother signed releases so that Ms. Dolly could speak with Mother's counselor at T.W. Ponessa. *Id.* at 7. Ms. Dolly

---

[3] Mother also gave birth to a son, T., in 1992, who was privately adopted. Agency's Ex. 2, at 1. It is not clear when the adoption of T. took place.

contacted Mother's counselor, who reported that Mother was attending substance abuse and mental health counseling. *Id.* Mother was attending treatment weekly, and she was compliant with her treatment goals. *Id.* at 7-8.

Ms. Dolly also spoke with Mother's Dauphin County probation officer, who reported that Mother was on probation due to 2012 convictions of endangering the welfare of a child and use or possession of drug paraphernalia. *Id.* at 8-9. Mother was incarcerated in Dauphin County just prior to the March 17, 2014 termination hearing, and remained incarcerated for an unspecified period of time. *Id.* at 9. Mother's Lancaster County probation officer reported that Mother was on probation due to 2014 convictions for driving under the influence, use or possession of drug paraphernalia, and disorderly conduct. *Id.* at 9-10. As part of her probation, Mother was required to complete, *inter alia*, an "alcohol highway safety class." *Id.* at 10. Mother failed to comply with the requirements of her probation, and was incarcerated in April of 2015. *Id.* at 11. Ms. Dolly explained Mother's incarceration as follows.

> Q. And do you know what led to her most recent incarceration?
>
> A. Yes. [Mother] had a recent hearing in front of Judge Wright because she had not completed the alcohol safety class. When she appeared in front of Judge Wright, he felt that she was visibly intoxicated at that point and had ordered her to have a screen that day before she left the courthouse. And [Mother] did not appear for her screening, and they ended up picking her up in New York.

*Id.*; Agency's Ex. 3, at 1-2. Mother's Lancaster County probation officer expected that Mother would remain incarcerated "for some time." N.T., 5/11/15, at 12.

Based on this evidence, the orphans' court found that Mother has a history of parental incapacity. Orphans' Court Op., 7/7/15, at 7-8. The court reasoned that Mother has harmed Child, both physically and emotionally, and that Mother has shown "no indication whatsoever that she can change her ways of dealing with her child. . . . The [c]ourt has nothing before it in the record but a sad history of abuse and neglect." *Id.*

After careful review, we conclude that the orphans' court did not abuse its discretion by involuntarily terminating Mother's parental rights to Child. *See In re T.S.M.*, 71 A.3d at 267. For over twenty years, Mother has demonstrated that she is incapable of being a parent. *See, e.g.*, Agency's Ex. 2, at 1. Mother has had ample opportunities to remedy her substance abuse, mental health, and legal issues, and she has repeatedly failed to do so. *See, e.g.*, *id.* Mother's parental incapacity has left Child without proper parental care, control, or subsistence, and the record substantiates the orphans' court's determination that Mother cannot, or will not, remedy this incapacity. Mother is not entitled to relief.

We next consider whether the orphans' court abused its discretion by terminating Mother's parental rights under Section 2511(b).[4] We have discussed our analysis under Section 2511(b) as follows.

> Subsection 2511(b) focuses on whether termination of parental rights would best serve the developmental, physical, and emotional needs and welfare of the child. In **In re C.M.S.**, 884 A.2d 1284, 1287 (Pa. Super. 2005), this Court stated, "Intangibles such as love, comfort, security, and stability are involved in the inquiry into the needs and welfare of the child." In addition, we instructed that the trial court must also discern the nature and status of the parent-child bond, with utmost attention to the effect on the child of permanently severing that bond. **Id.** However, in cases where there is no evidence of a bond between a parent and child, it is reasonable to infer that no bond exists. **In re K.Z.S.**, 946 A.2d 753, 762-63 (Pa. Super. 2008). Accordingly, the extent of the bond-effect analysis necessarily depends on the circumstances of the particular case. **Id.** at 63.

**In re Adoption of J.M.**, 991 A.2d 321, 324 (Pa. Super. 2010).

Ms. Dolly testified that she visits Child once a month or once every two months. N.T., 5/11/15, at 14. Child seeks out his pre-adoptive foster parents for love, care, and comfort, and to meet his basic needs. **Id.** at 15. Child gets along with the foster parents' biological sons, and they "act like very typical siblings . . . ." **Id.** A bonding assessment was conducted by Dr. Suzanne Ali, who concluded that disrupting the bond between Child and his

---

[4] While Mother does not discuss Section 2511(b) in the argument section of his brief, we will nonetheless consider this issue. **See In re C.L.G.**, 956 A.2d 999, 1010 (Pa. Super. 2008) (*en banc*) (considering Section 2511(b) despite the appellant's failure to challenge the orphan court's analysis).

foster parents would be detrimental to Child. *Id.* Ms. Dolly indicated that terminating Mother's parental rights would be in the best interest of Child, so that Child can be adopted and have a stable and permanent home. *Id.* at 15-16. Maintaining Child in foster care would cause greater harm to him than terminating Mother's parental rights. *Id.* at 16.

The orphans' court found that it would best serve Child's needs and welfare to be adopted by his foster family. Orphans' Court Op., 7/7/15, at 9. The court emphasized that Child is bonded with his foster family and that Child has no relationship with Mother. *Id.*

We again discern no abuse of discretion. *See In re T.S.M.*, 71 A.3d at 267. The record indicates that Child has had no visits with Mother since at least October of 2013. Thus, there is no reason to believe that Child continues to share a necessary or beneficial bond with Mother. Conversely, Child is bonded with his foster family, with whom he has resided since December of 2012. The record supports the orphan court's determination that Child's needs and welfare would best be served by terminating Mother's parental rights and allowing Child to be adopted by his foster parents. *See id.*

For the foregoing reasons, we affirm the decree of the orphans' court involuntarily terminating Mother's parental rights to Child.

Decree affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/13/2015